**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

| | |
|---|---|
| **MARTIN ENERGY SERVICES, LLC,** | No: 5:14-cv-00322-RH/GRJ |
|       **Plaintiff,** | |
| **v.** | |
| **M/V BRAVANTE IX, ITS ENGINES, MACHINERY, TACKLE, APPURTENANCES, APPAREL, ETC. and BOLDINI LTD. and GRUPO BRAVANTE,** *in personam*, | |
|       **Defendants.** | |
| **BOLDINI LTD. and GRUPO BRAVANTE,** | |
|       **Counterclaimants,** | |
| **v.** | |
| **MARTIN ENERGY SERVICES, LLC, O.W. BUNKER & TRADING do BRASIL, O.W. BUNKER MIDDLE EAST DMCC, and ING BANK, N.V.** | |
|       **Defendants on Counterclaim and Crossclaim.** | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF BOLDINI LTD'S AND GRUPO BRAVANTE'S MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM OF ING BANK N.V.**</u>

REED SMITH LLP
599 Lexington Avenue, 22nd FL
New York, New York 10022
Telephone: (212) 521-5400
Facsimile:  (212) 521-5450
*Counsel for Boldini Ltd. and Grupo Bravante*

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF UNDISPUTED FACTS ......................................................2

III.   LEGAL STANDARD............................................................................................6

IV.   LEGAL ARGUMENT..........................................................................................7

      A.    The Boldini Entities Are Entitled to Summary Judgment on ING's Counterclaim............................................................................................7

           1.    The December 30th Order released the Boldini Entities from further liability.............................................................................7

           2.    ING's counterclaim is not "truly independent" of the interpleader action..................................................................................8

           3.    ING cannot establish a contractual right to payment for the Delivered Fuel...........................................................................11

      B.    The Boldini Entities Are Entitled to Their Reasonable Attorneys' Fees...............13

IV.   CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Burger King Corp. v. E-Z Eating, 41 Corp.*,
   542 F.3d 1306 (11th Cir. 2009) ................................................6

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................6

*Cox v. Administrator U.S. Steel & Carnegie*,
   17 F.3d 1386 (11th Cir. 1994) ................................................6

*D'Angelo v. ConAgra Foods, Inc.*,
   422 F.3d 1220 (11th Cir. 2005) ..............................................6

*First Interstate Bank of Oregon, N.A. v. United States*,
   891 F. Supp. 543 (D. Or. 1995) ............................................13

*Harris Corp. v. Dunn*,
   No. 6:05-cv-1388-Orl-19DAB, 2006 U.S. Dist. LEXIS 71073 (M.D. Fl. Aug.
   25, 2006) ................................................................................8

*Katsaris v. United States*,
   684 F. 2d 758 (11th Cir. 1982) ............................................13

*Kurland v. United States*,
   919 F. Supp. 419 (M.D. Fla. 1996).......................................13

*In re Mandalay Shores Co-op Housing Assoc. Inc.*,
   21 F.3d 380 (11th Cir. 1994) ...........................................7, 13

*Metro. Life Ins. Co. v. Baretto*,
   178 F. Supp. 2d 745 (S.D. Tex. 2001) ..................................9

*Ohio Nat'l Life Assurance Corp. v. Langkau ex rel. Estate of Langkau*,
   353 F.App'x 244 (11th Cir. 2009) .....................................7, 9

*Perkins State Bank v. Connolly*,
   632 F. 2d 1306 (5th Cir. 1980) ............................................13

*Pro-Steel Bldgs, Inc. v. United States*,
   810 F.Supp.2d 1302 (N.D. Fla. May 16, 2011) ................13, 14

*Prudential Ins. Co. of Am. v. Boyd*,
   781 F.2d 1494 (11th Cir. 1986) .......................................13, 14

*Prudential Ins. Co. of Am. V. Hovis,*
    553 F.3d 258 (3d Cir. 2009).............................................................................................9, 10

*Sec. Life of Denver Ins. Co. v. Shah,*
    No. 4:11-cv-008, 2012 WL 3777135 (S.D. Ga. Aug. 29, 2012)...............................................9

**Rules**

FED R. CIV. P. 56(c) ....................................................................................................................6

# I.     INTRODUCTION

Grupo Bravante ("**Bravante**") is a Brazilian offshore oilfield servicer.  It ordered fuel for a vessel that was being constructed in Panama City for Boldini Ltd. ("**Boldini**" and, together with Bravante, the "**Boldini Entities**").  The fuel was ordered from a Brazilian broker with whom Bravante commonly dealt.  The Brazilian broker arranged for the fuel to be delivered by the plaintiff Martin Energy Services, LLC ("**Martin**").

Counterclaim defendant ING Bank N.V. ("**ING**"), a party with whom the Boldini Entities never dealt — and which has no apparent connection to either the fuel supplier or the Brazilian broker — is seeking to compel the Boldini Entities to double-pay for the fuel by asserting a breach of contract counterclaim.[1]  Since there is no material issue of fact, the Boldini Entities are moving for summary judgment dismissing ING's counterclaim.

It is undisputable that the Boldini Entities are mere stakeholders in a dispute between ING and the fuel supplier.

The Boldini Entities were confronted by competing demands for payment.  One was an invoice, apparently generated for ING's purposes.  The other was this action, accompanied by an application to attach another vessel that was also under construction in Panama City.  To avoid the threatened attachment and resolve the competing claims for payment, the Boldini Entities filed an interpleader and then paid the disputed funds into court.

By an order of the Court entered in this action on December 30, 2014, the Boldini Entities' payment of the disputed funds released Bravante from any further liability to pay for the

---

[1] There seems to be some confusion as to the nature of the counterclaim asserted by ING.  Review of the ING Answer (as defined below) [Dkt No. 27] suggests a breach of contract claim premised on the Boldini Entities' failure to pay the invoiced amount for the fuel supplied.  In a conference with this Court, however, ING counsel recently suggested that ING's claim is based on "the maritime lien in this case on behalf of the contract supplier." *See* Exhibit A (Excerpt from Transcript of Telephonic Scheduling Conference held on October 8, 2015, at 18:8-24) to the Declaration of Christopher A. Lynch, Esq. submitted herewith ("**Lynch Decl.**").  The Boldini Entities note that there is no reference to a lien right in the ING Answer but assert that the precise nature of the claim is irrelevant to this motion.

fuel.  Despite the clear provisions of the December 30, 2014 order, ING insists that it has the right to simultaneously litigate its entitlement to the funds held by the Court and seek to recover the same amount from the Boldini Entities, essentially requiring it to double pay for the fuel it received.

For the reasons set forth herein, summary judgment should be granted dismissing ING's counterclaim.  In addition, judgment should be entered awarding the Boldini Entities their reasonable attorneys' fees and costs associated with the interpleader claim, and, from ING, all additional reasonable attorneys' fees and costs incurred in connection with the meritless counterclaim it insists on prosecuting.

## II.    STATEMENT OF UNDISPUTED FACTS

On October 13, 2014, an employee of Bravante, a Brazilian marine operator, requested via e-mail that O.W. Bunker & Trading do Brasil ("**O.W. Brasil**") provide a quote for 300 metric tons of diesel fuel to be delivered to the *M/V Bravante VIII*, a vessel that was being built for Boldini at Eastern Shipbuilding in Panama City, Florida (the "**Vessel**").  Lynch Decl., Exhibit B (ING FLA 0041 – ING FLA 0042).  An employee of O.W. Brasil responded by providing a quoted price of US $967/ton, delivered.  *Id.*  Finally, Bravante agreed to the quoted price and proceeded to schedule with O.W. Brasil a date and time for delivery.  *Id.*  The foregoing communications were had exclusively between one or more employee of Bravante and one or more employee of O.W. Brasil.  *Id.*; Declaration of Vinicius Castro submitted herewith ("**Castro Decl.**"), ¶¶ 3, 4.  The requested fuel, totaling 96,000 gallons (the "**Delivered Fuel**"), was loaded aboard the Vessel on October 21, 2014.  Lynch Decl., Exhibit B (ING FLA 0032).

The Delivered Fuel was supplied to the Vessel by Martin at the direction of O.W. Bunker USA ("**O.W. USA**").  Lynch Decl., Exhibit B (ING FLA 0010 – ING FLA 0012).  On October

23, 2014, Martin invoiced O.W. USA, seeking payment for the Delivered Fuel in the amount of $286,342.08. *Id.* In turn, on October 31, 2014, O.W. Brasil sent Bravante an invoice, dated October 21, 2014, accompanied by a delivery receipt that had been issued by Martin. Lynch Decl., Exhibit B (ING FLA 0032 – ING FLA 0035). The invoice sent to Bravante was issued by another entity, O.W. Bunker Middle East DMCC ("**O.W. Middle East**"), and demanded payment from Bravante in the amount of $290,100, with such payment to be made to an account at ING. *Id.* Neither Bravante nor Boldini had any communications with Martin or O.W. Middle East with respect to the Delivered Fuel. Castro Decl., ¶ 4.

On November 19, 2014, Martin commenced the instant action against the Boldini Entities asserting claims under alternate theories of breach of contract and *quantum meruit*. *See* Docket ("**Dkt**") No. 1.[2] Martin's complaint, as amended by that First Amended Complaint filed December 15, 2014 (the "**Amended Complaint**"), seeks damages from the Boldini Entities in the amount of $286,342.08 (*i.e.*, the amount Martin invoiced O.W. USA), plus prejudgment interest and costs. [Dkt No. 7.] In addition, Martin asked the Court to arrest the *M/V Bravante IX*, a vessel which did not receive any of the Delivered Fuel. [Dkt Nos. 4, 7.]

On December 23, 2014, the Boldini Entities answered the Amended Complaint and asserted a crossclaim against ING, O.W. Brasil and O.W. Middle East, and a counterclaim against Martin, for interpleader pursuant to 11 U.S.C. § 1335(a). [Dkt No. 8.] On the same date, the Boldini Entities also filed an *Agreed Motion for Entry of Order Granting Interpleader Relief and Authorizing Payment of Funds into the Court Registry* (the "**Consent Motion**"), seeking authority to deposit with the Court's registry funds in the amount of $290,100 (the

---

[2] The Court can take judicial notice of the documents entered on its docket in this case. Accordingly, the same are not separately submitted herewith but will be referred to by the ECF number assigned to such documents on the Court's docket.

"**Receivable**").  [Dkt No 9.]  On December 30, 2014, the Court entered an order granting the

Consent Motion (the "**December 30th Order**").  [Dkt No. 10.]

The December 30th Order provides in pertinent part:

1.      [Boldini Entities] are directed to deposit US $290,100, in the Court's registry until the Interpleader Defendants[3] respective rights to the Receivable are determined by the Court.  Once deposited, these funds shall constitute security in place of and staying execution of *in rem* process against the M/V BRAVANTE IX and the M/V BRAVANTE VIII, pursuant to Supplemental Rule E(5);

2.      The Interpleader Defendants, and any other individuals or entities claiming to have any right to, or interest in, the Receivable, shall appear and assert any claims to, or interests in, the Receivable and to state any objections to the disposition of the Receivable not later than thirty (30) calendar days of the date that a copy of this Order is delivered to Defendants via overnight express courier service or they will be forever barred and precluded from asserting such any claim to, or interest in, the Receivable;

3.      Pending further order of this Court, the Interpleader Defendants are enjoined from instituting or pursuing any proceedings in any court against the [Boldini Entities] on account of any right to, or interest in, the Receivable, including, but not limited to, any action to arrest, seize or attach the *M/V Bravante IX*, or any other vessel or assets owned, operated or controlled by Counterclaimants;

\* \* \*

5.      The [Boldini Entities] are released and discharged from any and all liability to Martin, the Interpleader Defendants and any other persons claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Receivable . . .

Dkt No. 10 at pp. 5-6.

The Receivable was deposited with the Court's registry on December 31, 2014.  [Dkt No.

12.]  On January 21, 2015, Martin filed its answer to the Boldini Entities' counterclaim and

asserted its claim to the Receivable.  [Dkt No. 15.]  On February 20, 2015, Martin filed a motion

to release the Receivable.  [Dkt No. 16.]  At that time, no other Interpleader Defendant had

---

[3] Interpleader Defendants is defined in the December 30th Order to include Martin, ING, O.W. Middle East and O.W. Brasil.  [Dkt No. 10.]

appeared in the action or asserted with the Court its claim to the Receivable.  By order entered February 23, 2015 (the "**February 23rd Order**"), the Court directed the Clerk to disburse $286,342.08 of the interpleaded funds to Martin, plus prejudgment interest.  [Dkt No. 17.]  The February 23rd Order was amended by Order entered on February 25, 2015 (the "**February 25th Order**") to provide that the amount disbursed to Martin, together with prejudgment interest, shall not exceed the amount of the Receivable deposited with the Court's registry.  [Dkt No. 19.]

After the Clerk of the Court released the Receivable to Martin, ING appeared in the action as a purported assignee of O.W. Middle East.  On March 11, 2015, ING filed an emergency motion to intervene in the case and asked the Court to vacate its prior orders (the "**Motion to Vacate**").  [Dkt No. 20.]  Specifically, ING asked that the Court vacate and/or reconsider the December 30th Order, the February 23rd Order, and the February 25th Order.  *Id*. In response to the Motion to Vacate, the Boldini Entities advised the Court that, while they took no position on the Motion to Vacate to the extent ING sought to vacate the February 23rd Order and the February 25th Order, they did oppose the vacatur of the December 30th Order as doing so would not be in the interest of any of the parties or the Court.  [Dkt No. 23.]  On March 18, 2015, the Court entered an order which, *inter alia*, vacated the February 23rd Order and the February 25th Order and directed Martin to restore the Receivable to the Court's Registry.  [Dkt No. 25.]  Notably, the Court *did not* vacate or in any way modify the December 30th Order.

On April 8, 2015, ING, as the purported assignee of O.W. Middle East, filed its answer to the Boldini Entities' counterclaim for interpleader and asserted its own counterclaim against the Boldini Entities' for breach of contract in connection with the Delivered Fuel (the "**ING Answer**").  [Dkt No. 27.]   On August 18, 2015, the Boldini Entities answered ING's

- 5 -

counterclaims and asserted as an affirmative defense, *inter alia*, the release contained in the December 30th Order.  [Dkt No. 48.]

### III.   LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact.  F<small>ED</small> R. C<small>IV</small>. P. 56(c); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005) (Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact.").  "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact."  *Burger King Corp. v. E-Z Eating, 41 Corp.*, 542 F.3d 1306, 1313 (11th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  "If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to show the existence of a genuine issue of fact."  *Id.*; *see also Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994) ("The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. . . .  Once the moving party has carried its burden, the non-moving party must show the existence of a genuine issue of material fact to avoid summary judgment.") (internal citations omitted).

## IV.    LEGAL ARGUMENT

### A.    The Boldini Entities Are Entitled to Summary Judgment on ING's Counterclaim.

ING's counterclaim against the Boldini Entities for breach of contract is susceptible to summary judgment in the Boldini Entities' favor for a number of reasons.  First, by virtue of the December 30th Order, the Boldini Entities have been released and discharged from the very claim that ING asserts.    Second, ING's counterclaim must fail because it is not "truly independent" of the interpleader action that the Boldini Entities commenced when faced with competing demands for payment for the Delivered Fuel.  Finally, ING's claim must fail because it is unable to prove that O.W. Middle East had a contractual relationship with either Bravante or Boldini.  It follows, then, that ING, as putative assignee of the rights of O.W. Middle East, cannot demonstrate its entitlement to payment from the Boldini Entities for the Delivered Fuel. For each of these reasons, summary judgment should be granted in favor of the Boldini Entities dismissing ING's counterclaim.

### 1.    The December 30th Order released the Boldini Entities from further liability

"Interpleader is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner."  *In re Mandalay Shores Co-op Housing Assoc. Inc.*, 21 F.3d 380, 383 (11th Cir. 1994).  The interpleader action consists of two stages.  In the first, the court determines whether the interpleader is proper and whether to discharge the stakeholder from further liability to the claimants.  Once that has been determined, the court then evaluates "the respective rights of the claimants to the interpleaded funds."  *See Ohio Nat'l Life Assurance Corp. v. Langkau ex rel. Estate of Langkau*, 353 F.App'x 244, 248 (11th Cir. 2009) (citation omitted).  Here, the first stage concluded when the Court made the requisite findings

that interpleader was appropriate and entered the December 30th Order, which, *inter alia*, "***released and discharged [the Boldini Entities] from any and all liability to Martin, the Interpleader Defendants and any other persons claiming through or acting with them, or claiming any interest, beneficial or legal, through such party or through others in the Receivable.***"  [Dkt No. 10, p.6.] (emphasis added).  Because the Boldini Entities have been released and discharged from the very liability ING seeks to impose by its counterclaim, that claim should fail.

ING has previously sought to obtain relief from this aspect of the December 30th Order and its efforts were rejected.  Specifically, in its Motion to Vacate, ING asked that the Court vacate and/or reconsider the December 30th Order, the February 23rd Order, and the February 25th Order.  [Dkt No. 20.]  The December 30th Order contains the Boldini Entities' release and discharge and the last two orders concerned turnover of the Receivable to Martin.  The Court granted so much of the Motion to Vacate that sought the vacatur of the February 23rd Order and the February 25th Order, but notably left in place the entirety of the December 30th Order.  [Dkt No. 25.]  ING sought relief from the December 30th Order and was rejected.  It took no further steps to challenge that order and should not be allowed to perform an end run around the release and discharge provisions of that order by way of its counterclaim.

2.    **ING's Counterclaim is not "truly independent" of the interpleader action**

Although the mere filing of an interpleader does not "immunize" the party commencing the interpleader from state law counterclaims, it is intended to provide some level of protection to the stakeholder for related claims.  This is logically necessary because "'if the defendants in the interpleader action [were] permitted to carry forward with counterclaims against the stakeholder based upon the same interpleaded funds, the very purpose of the interpleader action would be utterly defeated.'"  *Harris Corp. v. Dunn*, No. 6:05-cv-1388-Orl-19DAB, 2006 U.S.

Dist. LEXIS 71073, at *11-12 (M.D. Fl. Aug. 25, 2006) (quoting *Metro. Life Ins. Co. v. Baretto*, 178 F. Supp. 2d 745, 747-48 (S.D. Tex. 2001)).

It has been noted that although the Eleventh Circuit has not "fully developed" precedent on the protections of the interpleader plaintiff from counterclaims, reliance has been had on at least one other circuit's jurisprudence to provide a framework for such protections.  *See Sec. Life of Denver Ins. Co. v. Shah*, No. 4:11-cv-008, 2012 WL 3777135, at *5 (S.D. Ga. Aug. 29, 2012) (citing *Ohio Nat'l Life Assurance Corp. v. Langkau ex rel. Estate of Langkau*, 353 F.App'x 244 (11th Cir. 2009)).  Specifically, the Eleventh Circuit in *Langkau* looked to the Third Circuit's decision in *Prudential Ins. Co. of Am. V. Hovis*, 553 F.3d 258 (3d Cir. 2009), for guidance on this issue.  The rationale underlying *Hovis* is equally applicable here to demonstrate why ING's breach of contract claim cannot co-exist with the interpleader action.

In *Hovis*, an insurer brought an interpleader action after a question was raised regarding the propriety of a purported change in beneficiary request made shortly before the insured's death.  *Prudential Ins. Co. of Am. V. Hovis*, 553 F.3d 258 (3d Cir. 2009).  A counterclaim was brought against the insurer on multiple theories, essentially arguing that the request to change the beneficiary was not processed in a timely manner.  The Third Circuit made clear that an interpleader action shields the insurer from any further liability regarding the interpleaded funds. The court also noted the prevailing rule of law: a counterclaim can be maintained by a claimant only if the claim is "truly independent of who was entitled to the life insurance proceeds which is the issue the interpleader action was brought to settle." *Id.* at 264-65.  But when the counterclaim boils down to nothing more than an allegation that the insurer failed to resolve the matter in the counterclaimants' favor, the counterclaim cannot stand, noting that a counterclaim is not truly

independent if it would not have been brought had the insurer simply paid the disputed funds to the claimant.  *Id.*

As pled, ING's counterclaim is not "truly independent" of the interpleader action.  In essence, ING's counterclaim merely alleges that O.W. Middle East assigned all of its rights "in respect of all amounts owing by [the Boldini Entities] under their supply contracts, including unpaid invoices, totaling $290,100.00" and that the Boldini Entities are "obligated to pay the Disputed Funds" to ING as assignee of O.W. Middle East.  *See* ING Answer pp. 7-8.  Such a claim is barred because it directly addresses entitlement to the interpleaded funds.  *Hovis*, 553 F.3d at 264-65.  It is also impossible to separate the counterclaim from the interpleader action, once again demonstrating that they are not "truly independent" of each other.  It is undisputable that, had the Boldini Entities simply paid an O.W. Bunker entity the invoice amount of $290,100 (i.e., the precise amount deposited in the Court's registry in the interpleader action), ING (or anybody else claiming through the O.W. Bunker entities) would never have asserted the present counterclaim.  This is precisely the Third Circuit's test in *Hovis*.  553 F.3d at 264-65.  Moreover, nothing revealed in discovery support a finding that ING's counterclaim is "truly independent" of the interpleader action.

ING's damages theory also demonstrates why the counterclaim is substantively nonsensical. The counterclaim appears to be an "insurance policy" that presupposes that the Court will incorrectly decide the interpleader in favor of Martin, the only other Interpleader Defendant to assert a right to the Receivable, and that it will take a counterclaim against the Boldini Entities to rectify that error.  The benefits to be derived from its alleged contract with the Boldini Entities will be, as a matter of law, whatever the Court ultimately determines them to be in the interpleader action – nothing more and nothing less.  Because the counterclaim is

hopelessly intertwined with the interpleader action and will be mooted by the Court's eventual determination as to which party will receive what share of the Receivable, the counterclaim should be dismissed.

### 3.	ING cannot establish a contractual right to payment for the Delivered Fuel

ING's claim against the Boldini Entities is predicated solely on a conclusory assertion that ING is the assignee of the rights of O.W. Middle East.  *See* Lynch Decl., Exhibit C (Transcript of Deposition of Paul Copley ("**Copley Dep. Tr.**") at 72:10-14).  However, not one document, nor any of the deposition testimony given in this case, supports that assertion.

O.W. Middle East was a stranger to both the purchase and delivery of the fuel.

First, there is no evidence that the Boldini Entities contracted with, or are otherwise obligated to, O.W. Middle East.  The Boldini Entities contracted with O.W. Brasil for the delivery of bunker fuel to the *M/V Bravante VIII*, but between that relationship and O.W. Middle East's purported right to payment lies a glaring evidentiary gap that ING has not, and cannot, fill.

ING purports to act as a security agent under a *USD 700,000,000 Multicurrency Revolving Base Facilities Agreement*, dated as of December 19, 2013, (the "**Credit Agreement**") and a related *English Omnibus Security Agreement*, dated as of December 19, 2013, (the "**Security Agreement**" and, together with the Credit Agreement and other related agreements, the "**Finance Documents**") among ING and various O.W. Bunker entities including O.W. Middle East.  *See* ING Answer [Dkt No. 27] p. 7.  The Finance Documents produced by ING in this action identify O.W. Middle East as a "chargor" thereunder (*i.e.*, a debtor that has granted the lender a security interest in certain assets identified in the Finance Documents).  Notably absent as a party to the Financing Documents, *in any context*, is O.W. Brasil, the only

entity with which Bravante contracted for the delivery of bunker fuel to the Vessel.  *See* Lynch Decl., Exhibit C (Copley Dep. Tr. at 64:3-15).

As reflected in the documents produced and testimony given in this action, Bravante negotiated with and entered into an agreement with O.W. Brasil by which O.W. Brasil would coordinate the delivery of bunker fuel to the *M/V Bravante VIII*.  *See* Lynch Decl., Exhibit B (ING FLA 0041 – ING FLA 0042); Exhibit C (Copley Dep. Tr.) at 66:14-16).  Indeed, from Bravante's perspective it was O.W. Brasil with whom it was entering into an agreement for the bunker fuel and O.W. Middle East's involvement, if any, did not become known until the invoice was submitted to Bravante via an O.W. Brasil email address.  *See* Castro Decl., ¶¶ 3-6.  Aside from this invoice purportedly issued by O.W. Middle East on account of the Delivered Fuel, there is no demonstrated nexus between Bravante's transaction with O.W. Brasil and O.W. Middle East, through which entity ING claims to act.

ING attempts to address this disconnect (which would be fatal to any claim ING might have against the Boldini Entities or the Receivable) by means of hearsay testimony that O.W. Brasil was a "sales office" of O.W. Middle East.  *See* Lynch Decl., Exhibit C (Copley Dep. Tr. at 73:15-24).  ING's Rule 30(b)(6) witness admitted, however, that he had no personal knowledge of this purported relationship and that his testimony in this regard was based solely on what others have told him.  *See* Lynch Decl., Exhibit C (Copley Dep. Tr. at 76:19-77:14).

Because ING has not provided any admissible evidence of its self-serving position that O.W. Brasil was "a front" for O.W. Middle East, it is unable to successfully assert a claim to recover payment on account of the Delivered Fuel.  ING's claim against the Boldini Entities therefore fails.

**B.       The Boldini Entities Are Entitled to Their Reasonable Attorneys' Fees**

"In an interpleader action, costs and attorneys' fees are generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stake holder." *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986) ("The award of costs and attorneys' fees in an interpleader action is generally to be imposed against the party who has benefited from the interpleader action."); *accord Pro-Steel Bldgs, Inc. v. United States,* 810 F.Supp.2d 1302, 1305 (N.D. Fla. May 16, 2011) ("Under both Florida and federal law, an interpleader plaintiff may recover its reasonable attorneys' fees and costs, so long as the plaintiff did not cause the conflicting claims, was disinterested, and acted in good faith.") (*citing Katsaris v. United States*, 684 F. 2d 758, 763 (11th Cir. 1982) (holding that under Florida and federal law, reasonable attorneys' fees can be awarded to an interpleader plaintiff when the plaintiff is a disinterested stakeholder, has acted in good faith, and did not cause the conflicting claims)); *In re Mandalay*, 21 F. 3d at 383 ("Attorneys' fees are justified in many interpleader actions…."); *Kurland v. United States*, 919 F. Supp. 419, 421 (M.D. Fla. 1996) ("It is a generally accepted principle that a disinterested stakeholder filing an action in interpleader may be dismissed from the case, discharged from further liability, and, in the court's discretion, awarded attorneys' fees and costs."); *First Interstate Bank of Oregon, N.A. v. United States*, 891 F. Supp. 543, 548 (D. Or. 1995) ("Courts routinely grant such awards absent a showing of bad faith.").

To recover its reasonable attorneys' fees and costs, the interpleader plaintiff must establish only that it (a) acted in good faith, (b) did not cause the conflicting claims, and (c) was disinterested. *Pro-Steel Bldgs.*, 810 F. Supp. 2d at 1305 (*citing Katsaris,* 684 F.2d at 763); *cf. Perkins State Bank v. Connolly*, 632 F. 2d 1306, 1311 (5th Cir. 1980) ("Although costs and attorney's fees are generally awarded by federal courts to the plaintiff who initiates the

- 13 -

interpleader as a mere stakeholder, the plaintiff who enters the conflict (by contesting the ownership of the fund or by disputing the correct amount of his liability) will not, in the absence of special circumstances, be awarded any expenses."). The Court may tax the costs and fees against the interpleader fund, or, in appropriate circumstances, the losing party directly. *Boyd*, 781 F. 2d at 1497-98; *accord Pro-Steel*, 810 F. Supp. 2d at 1305 ("Pro-Steel should be made whole -- or as close as possible from the limited remaining fund.").

Pursuant to the December 30th Order, the Boldini Entities deposited $290,100 with the Court's registry and accordingly were released and discharged pursuant to that order. There is no colorable argument that the Boldini Entities have an interest or are claimants in the Receivable. Further, the adverse claims to the Receivable are evidenced by the position of both ING and Martin that each is entitled to the full amount of the Receivable. These adverse claims were not caused by the Boldini Entities but, apparently the unforeseeable bankruptcy filing by O.W. Bunker USA (*see* Lynch Decl., Exhibit D), which motivated Martin to pursue recovery from the Boldini Entities. Finally, the fact that this litigation has now been going on for a year demonstrates the uncertainty as to which of the two Interpleader Defendants is entitled to the Receivable and justified the Boldini Entities' commencement of the interpleader action. Thus, it is clear that the Boldini Entities have acted in good faith and should be awarded their reasonable attorneys' fees and costs for bringing the interpleader action. That award should come from the Receivable.

In addition, however, ING's conduct in prosecuting a spurious counterclaim, which is in disregard of the release provisions in the December 30th Order, warrants awarding the Boldini Entities fees and costs to be collected from ING beyond those solely related to bringing the interpleader. A great deal of expense has been unnecessarily incurred by the Boldini Entities

- 14 -

through, *inter alia*, responding to pleadings, engaging in motion practice, participating in discovery, and preparing for and attending a Court-ordered mediation.  None of this expense would have been incurred had ING not ignored the December 30th Order and asserted its baseless counterclaim.

Accordingly, the Boldini Entities request entry of judgment in their favor (i) for the reasonable attorneys' fees and costs incurred in connection with bringing the interpleader action, with such fees and cost to be paid from the Receivable; and (ii) for the reasonable attorneys' fees and costs incurred subsequent to entry of the December 30th Order in defense of ING's counterclaim, with such fees and cost to be chargeable to ING directly, and in each case in an amount to be determined following application to the Court under Rule 54 and Local Rule 54.1.

## IV.    CONCLUSION

For the forgoing reasons, the Boldini Entities respectfully request that this Court grant its motion for summary judgment and that it enter judgment:  (i) against ING with regard to ING's counterclaim for breach of contract; (ii) for the reasonable attorneys' fees and costs incurred in connection with bringing the interpleader action, with such fees and cost to be paid from the Receivable; (iii) for the reasonable attorneys' fees and costs incurred by the Boldini Entities subsequent to entry of the December 30th Order in defense of ING's counterclaim, with such fees and cost to be chargeable to ING directly, and in each case in an amount to be determined following application to the Court under Rule 54 and Local Rule 54.1; and (iv) for such other and further relief as the Court may deem appropriate.

Dated:  November 23, 2015.

REED SMITH LLP

By: */s/ Christopher A. Lynch*
**Christopher A. Lynch**
New York Bar No. 4243655
email:  clynch@reedsmith.com
599 Lexington Avenue, 22nd FL
New York, New York 10022
Telephone: (212) 521-5400
Facsimile:  (212) 521-5450
*Counsel for Boldini Ltd. and Grupo*
*Bravante*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed this 23rd day of November, 2015, with the Clerk of the Court via CM/ECF which will send a notice of electronic filing to the following:

Russell Robert Steward
Russell R. Stewart Esquire - Panama City FL
900 E. 4th Street
Panama City, FL 32401
rrsfl@comcast.net

Douglas L. Smith
Burke, Blue, Hutchison, Walters & Smith, P.A.
221 McKenzie Ave.
Post Office Box 70
Panama City, FL 32402
dsmith@burkeblue.com

By: */s/  Christopher A. Lynch*