# EXHIBIT C

IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION
-------------------------------------------X

MARTIN ENERGY SERVICES, LLC,

                Plaintiff,

 v.                 No. 5:14-cv-00322-RS-GRJ

M/V BRAVANTE IX, ITS ENGINES, MACHINERY, TACKLE,
APPURTENANCES, APPAREL, ETC. and BOLDINI LTD.
and GRUPO BRAVANTE, in personam,

                Defendants.

-------------------------------------------X

BOLDINI LTD. and GRUPO BRAVANTE,

                Counterclaimants,

 v.

MARTIN ENERGY SERVICES, LLC. O.W. BUNKER &
TRADING do BRASIL, O.W. BUNKER MIDDLE EAST DMCC,
and ING BANK, N.V.,

                Defendants on Counterclaim
                and Crossclaim.

-------------------------------------------X
                October 29, 2015
                10:03 a.m.

                1221 6th Avenue
                New York, New York

    Video teleconference deposition of 30(b)(6) Witness, PAUL COPLEY, before Nicole Cannistraci, a Court Reporter and Notary Public within and for the State of New York.

```
 1
 2   A P P E A R A N C E S:
 3
 4      SEWARD & KISSEL LLP
 5      Attorneys for Witness and ING Bank, N.V.
 6           One Battery Park Plaza
 7           New York, New York 10004
 8      BY:  BRUCE G. PAULSEN, ESQ.
 9           BRIAN MALONEY, ESQ.
10
11      ALLEN & OVERY LLP
12      Attorneys for Witness and ING Bank, N.V.
13           1221 Avenue of the Americas
14           New York, New York 10020
15      BY:  LAURA R. HALL, ESQ.
16
17      ALLEN & OVERY LLP
18      Attorneys for Witness and ING Bank, N.V.
19           One Bishops Square
20           London
21           E1 6AD
22           United Kingdom
23      BY:  PETER WATSON, ESQ.
24           (Appearing via video teleconference)
25
```

```
 1
 2   A P P E A R A N C E S:
 3
 4        BURKE BLUE HUTCHINSON WALTERS & SMITH, P.A.
 5        Attorneys for ING Bank, N.V.
 6             221 McKenzie Avenue
 7             Panama City, Florida 32401
 8        BY:  WILLIAM S. HENRY, ESQ.
 9        (Appearing via phone)
10
11        STRASBURGER & PRICE, LLP
12        Attorneys for Martin Energy Services LLC
13             909 Fannin Street
14             Suite 2300
15             Houston, Texas 77010
16        BY:  F. WILLIAM MAHLEY, ESQ.
17        (Appearing via video teleconference)
18
19   ALSO PRESENT: John McClelland, appearing via
20   video teleconference - Houston
21
22
23
24
25
```

1                    Paul Copley
2        A.    Yes.
3        Q.    The chargors listed in this
4   document are numerous O.W. Bunker entities,
5   correct?
6        A.    Yes.
7        Q.    And is this document that is the
8   vehicle for those chargors to assign their
9   accounts receivable to the lenders and ING Bank
10  as its appointed agent?  Correct?
11             MR. PAULSEN:  Objection to form.
12       A.    Yes.
13       Q.    O.W. Bunker & Trading do Brasil is
14  not a chargor under this document, correct?
15       A.    Yes.
16       Q.    Can you go back to the Boldini
17  documents, please?
18       A.    Sure.
19       Q.    When did you first become aware
20  that Martin had filed this action against the
21  Bravante IX in Panama City, Florida?
22       A.    I don't recall.
23       Q.    Do you remember how you first
24  learned about it?
25       A.    No.  It was some time ago, I don't


Page 65

```
 1                    Paul Copley
 2   recall.
 3          Q.    As a representative of ING Bank
 4   today, have you researched that question?
 5               MR. PAULSEN:  Objection to form.
 6          A.    As to when I first became aware of
 7   the existence of the action?  No.
 8          Q.    As to when ING Bank first became
 9   aware of it.
10               MR. PAULSEN:  Objection to form.
11          A.    The short answer is no, I haven't
12   researched it, and I don't know, I don't recall.
13
14          Q.    If you would please look at pages
15   BOLD30 through 35.
16          A.    Yes.
17          Q.    Is this among the filing papers
18   that you have reviewed in this case?
19          A.    Yes.
20          Q.    Looking at page BOLD31 --
21          A.    Yes.
22          Q.    -- do you take issue with any of
23   the statements on that page?
24               MR. PAULSEN:  Objection to form.
25          A.    I'll just read through them one by
```

1                        Paul Copley

2    one.

3            Q.     Yes.  Just read them to yourself.

4            A.     Sure.  Your question is do I agree

5    with the statements made?

6            Q.     The question was do you take issue

7    with any of the statements contained on this

8    page?

9                   MR. PAULSEN:  Objection to form.

10           A.     I suppose -- understood.

11                  Statement (A), Bravante arranged

12   for Crossclaim Defendant O.W. Bunker & Trading

13   do Brasil to supply diesel fuel.  I don't know

14   if that's strictly speaking accurate.  So I

15   think Bravante ordered the supply of diesel fuel

16   from O.W. Bunker & Trading do Brasil.  I don't

17   know whether they arranged for the Defendant to

18   supply it.  It's perhaps a small point.

19                  Second point in (B) is I don't

20   know if that quantity is correct.  I thought I

21   recall seeing in the papers that it was a

22   slightly higher quantity but, again, perhaps

23   that's not a particularly relevant point.

24                  And the rest of it appears to

25   accord with my recollection of the fact pattern

1                  Paul Copley
2    in this case.
3         Q.    If you return to the next page,
4    please, and do the same with the first three
5    paragraphs on that page.  By the same, do you
6    take issue with any of those statements?
7         A.    Understood.
8              MR. PAULSEN:  Objection to form.
9         A.    F and G I don't take issue with.
10   H, I don't know what counterclaimants have
11   acknowledged, but I -- so I don't know what
12   they -- I don't know why they haven't paid, but
13   I understand -- this is included in -- I don't
14   know exactly what they claim one way or the
15   other regarding their obligations.
16        Q.    By that answer you're referring to
17   which paragraph?
18        A.    H.
19        Q.    F and G look correct to you?
20             MR. PAULSEN:  Objection to form.
21          Asked and answered.
22        A.    I think your previous question was
23   do I take any issue with that.  I don't.
24        Q.    Turn to page BOLD34, please.
25        A.    Sure.

```
 1                    Paul Copley
 2         Q.    And read paragraph three at the
 3   bottom to yourself, please, and tell me when
 4   you're finished.
 5         A.    Sure.  I'm finished.
 6         Q.    As far as you know, has ING Bank
 7   honored and respected this portion of the
 8   court's order?
 9               MR. PAULSEN:  Objection to form.
10         A.    As far as I know, ING Bank has not
11   instituted or pursued any proceedings in any
12   court against the counterclaimants on account of
13   any right to or interest in the receivable and
14   so on.
15         Q.    When did you first see this order,
16   which is Boldini 30 through 35?
17         A.    Some months ago, I don't recall
18   exactly.
19         Q.    Let's go back to the deposition
20   notice, which is Exhibit Number 1.
21         A.    Sure.
22         Q.    Please take a look at topic no. 1
23   on page 4.
24         A.    Page 4 topic 1; is that right?
25         Q.    Yes.
```

1                    Paul Copley
2         A.    Okay.
3         Q.    To the best of your knowledge, did
4    we generally at least discuss a contractual or
5    otherwise relationships between the entities
6    listed in this topic?
7               MR. PAULSEN:  Objection to form.
8         A.    We haven't discussed the Bravante
9    IX, nor have we discussed the contractual
10   relationship between O.W. Bunker do Brasil and
11   these entities; but aside from that, yes.
12        Q.    But we have discussed the
13   relationship between O.W. Bunker do Brasil and
14   Boldini and Bravante, correct?
15              MR. PAULSEN:  Objection to form.
16        A.    The relationship, insofar as
17   Boldini or Bravante communicated their fuel
18   order to a representative O.W. Bunker do Brasil;
19   if that's what you're referring to, then yes.
20        Q.    Are you aware of any other
21   contractual relationships, contractual or
22   otherwise, between Boldini, Bravante and O.W.
23   Bunker do Brasil that we haven't --
24        A.    Not between those parties, no.
25        Q.    Is there any anything for purposes

1                    Paul Copley
2     of completeness that you think needs to be added
3     to our discussion thus far about topic no. 1?
4              MR. PAULSEN:  Objection to form.
5         A.   Not that I can think of.
6         Q.   Looking at topic no. 2 --
7         A.   Yes.
8         Q.   -- are the e-mails we did
9     discussed so far the extent of your knowledge on
10    this topic?
11        A.   Yes.
12        Q.   Topic no. 3 same question?
13        A.   That's the extent of my knowledge,
14    yes.
15        Q.   Thank you.  Topic no. 4 same
16    question.
17        A.   That's the extent of my knowledge,
18    yes.
19        Q.   Let's look at topic no. 6.
20        A.   Yeah.
21        Q.   Can you generally summarize ING
22    Bank's position in this lawsuit with regard to
23    the funds that are in the registry of the court?
24             MR. PAULSEN:  Objection to form.
25        A.   It is the position of ING Bank

1          Paul Copley
2   that it is -- as an assignment of the receivable
3   from O.W. Bunker Middle East to Boldini S.A. in
4   respect of the fuel delivery and that that
5   assignment also included any rights associated
6   with that contract, including the right to claim
7   a maritime lien and payment of the invoice.
8          Q.   You're aware, of course, that
9   Martin is also claiming a maritime lien in the
10  extent of the fuel it provided to the Bravante
11  VIII, correct?
12         A.   Yes.
13         Q.   And is it your position that
14  Martin should not have a lien or do you have a
15  position on that subject?
16              MR. PAULSEN:  Objection to form.
17         A.   Yes, it's is our position that
18  there is one lien and it is held by ING Bank.
19         Q.   And that the only entity that ING
20  is acting on behalf of in that regard is O.W.
21  Bunker Middle East; is that correct?
22         A.   No, it's not strictly speaking
23  correct.  ING Bank is acting in its capacity as
24  security agent for the syndicates of lenders to
25  O.W. Bunker as our signee of the receivable from

Page 72

```
 1                    Paul Copley
 2   O.W. Middle East to ING Bank pursuant to the
 3   security agreement.
 4        Q.    Maybe I should clarify my
 5   question.  ING Bank is not asserting rights to
 6   the funds via or through O.W. Bunker USA,
 7   correct?
 8             MR. PAULSEN:  Objection to form.
 9        A.    Correct.
10        Q.    Like ING Bank is not asserting a
11   right to the funds via or through O.W. Bunker do
12   Brasil, correct?
13             MR. PAULSEN:  Objection to form.
14        A.    Correct.
15        Q.    And finally, ING Bank is not
16   asserting a right to the bonds via or through
17   Martin Energy, correct?
18             MR. PAULSEN:  Objection to form.
19        A.    Yes.
20        Q.    You are aware that no O.W. Bunker
21   entity has appeared and asserted any claim to
22   the funds in this case in its own name, correct?
23             MR. PAULSEN:  Objection to form.
24        A.    Yes, not to my knowledge.
25        Q.    That's correct, to your knowledge?
```

Page 73

1           Paul Copley
2      A.    Yes, to my knowledge.
3      Q.    I understand from conversations
4  with you and counsel that you would like the
5  right to review the transcript of this
6  deposition; is that correct?
7      A.    Yes.  As I understood it was
8  normal practice, yes.
9           MR. MAHLEY:  All right.  I will
10      pass the witness at this time.
11 EXAMINATION
12 BY MR. PAULSEN:
13      Q.    Mr. Copley, it's Bruce Paulsen.  I
14 have a couple of quick questions.
15           You mentioned, going back to the
16 notice of deposition, in -- with respect to
17 deposition topic no. 1 that you had not
18 discussed the relationship -- this is my
19 recollection -- between O.W. Bunker do Brasil
20 and O.W. Bunker Middle East.  Could you explain
21 that relationship?
22      A.    Yes, O.W. Bunker do Brasil was a
23 sales office of O.W. Bunker Middle East prior to
24 bankruptcy.
25      Q.    What does the sales office do?

Page 74

1           Paul Copley
2      A.    Procures sales from customers and
3   then issues invoices in the name of O.W. Bunker
4   Middle East.  So O.W. Bunker had a number of
5   these around the world, I don't know why
6   exactly, but O.W. Bunker do Brasil, as I
7   understand it, is one of those sales offices of
8   O.W. Bunker Middle East.
9      Q.    To your knowledge, was O.W. Bunker
10  do Brasil a contracting entity in the O.W.
11  group?
12          MR. MAHLEY:  Objection to form.
13     A.    No, not to my knowledge.
14     Q.    To your knowledge, did O.W. do
15  Brasil enter contracts with purchasers of
16  bunkers?
17     A.    Not to my knowledge.
18          MR. MAHLEY:  Objection.
19     A.    Not to my knowledge.
20     Q.    Mr. Mahley asked you about page
21  BOD34, which is paragraph three of the
22  December 30, 2014 order.
23     A.    Yes.
24     Q.    I think you said there have been
25  no actions instituted, no arrests of vessels.

1                    Paul Copley
2    Does ING or PWC maintain a listing of vessels it
3    should not be arresting due to orders such as
4    this one?
5         A.    Yes.
6         Q.    And to your knowledge, are the
7    vessels involved here on that list?
8         A.    I don't have a copy of the list
9    such that I could refer to, but whether it's an
10   order such as this, the vessel would typically
11   be on that list such that we would not pursue an
12   arrest action against the vessel because of the
13   existence of the interpleader proceedings.
14        Q.    But your attention was directed to
15   some e-mails from this fall threatening arrest.
16   Can you tell us a little bit about how that
17   might have happened?
18        A.    Sure.  I haven't spoken with Alex
19   Bentley about it, but, I mean, Alex has a
20   portfolio of customers and he is trying to
21   procure payment of the customers' obligations
22   to ING Bank.  And so he would follow a certain
23   number of steps, including the threat of arrest.
24   To the extent that he wished to actually
25   undertake an arrest, it would go to a team who,

Page 76

1  Paul Copley
2  amongst other things, would check the list of
3  vessels which should not be arrested because of
4  the existence of interpleader proceedings such
5  as this.  So I don't know whether he went as far
6  as that step.  I haven't asked him, but assuming
7  he did, assuming the vessel, the Bravante VIII
8  was on that list, then an arrest would not take
9  place.
10         MR. PAULSEN:  I have nothing
11     further.
12 EXAMINATION
13 BY MR. MAHLEY:
14     Q.   In follow up to some questions
15 Mr. Paulsen just asked you, he asked you about
16 the relationship between O.W. Bunker & Trading
17 do Brasil and O.W. Bunker Middle East, correct?
18     A.   He did.
19     Q.   You don't have any personal
20 knowledge of that relationship yourself, it's
21 just information that you have picked up along
22 the way since the collapse of the companies,
23 correct?
24         MR. PAULSEN:  Objection to form.
25     A.   Personal knowledge by -- do you

1                     Paul Copley
2    mean knowledge from the time prior to
3    bankruptcy?
4         Q.    Well, has O.W. Bunker Middle East
5    conducted any business since bankruptcy?
6         A.    Not to my knowledge.
7         Q.    What about O.W. Bunker do Brasil,
8    have they?
9         A.    I don't know.
10        Q.    Again, the source of your
11   information is hearsay; that is information
12   provided by others, correct?
13              MR. PAULSEN:  Objection to form.
14        A.    Correct, yes.
15        Q.    As to the other questions
16   Mr. Paulsen asked about arrest of the Bravante
17   VIII, what you're telling us is that so far that
18   action has only been threatened, but not taken;
19   is that right?
20        A.    Yes.
21        Q.    And are you telling us that
22   Mr. Bentley or others undertook those threats
23   without knowledge of the order?
24              MR. PAULSEN:  Objection.
25        A.    I don't know what Mr. Bentley's